## CUMBERLAND & LIBERTY MILLS, *et al.*, v. THOMAS G. KEGGIN

190 So. 492
Division B
Opinion Filed July 7, 1939

*William C. Gaither* and *McKay, Macfarlane, Jackson & Ramsey,* for Appellants.

*Charles F. Blake,* for Appellee.

WHITFIELD, P. J.—In February, 1937, appellee here brought suit in the Circuit Court for Hillsborough County, Florida, against the appellants, seeking to enjoin the sale of real estate as the property of James W. Keggin, deceased under an execution issued in 1936 on a judgment obtained against James W. Keggin in 1923 when he was a widower and his only two children, adult sons, were living with him, some of such property being claimed as the homestead of James W. Keggin, who died in 1935.

In the administration of the estate of James W. Keggin, no claim was presented under the judgment obtained against James W. Keggin in 1923. It is alleged that the judgment against James W. Keggin was not for any indebtedness for which the exempted homestead real estate may be made liable under the Constitution. The Court granted the injunction, and the defendants appealed.

The first question presented is:

"Does property alleged to be homestead constitute such a status under the Constitution of the State of Florida, where the judgment debtor was a widower at the time of the rendition of the judgment and the only persons residing with the said judgment debtor upon said property were his two sons, both of whom had reached their majority?"

The Constitution of Florida contains the following:

"A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars' worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists. But no property shall be exempt from sale

for taxes or assessments, or for the payment of obligations contracted for the purchase of said property, or for the erection or repair of improvements on the real estate exempted, or for house, field or other labor performed on the same. The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner; and no judgment or decree or exection shall be a lien upon exempted proprty except as provided in this article." Sec. 1, Art. X.

"The exemptions provided for in Section 1 shall inure to the widow and heirs of the party entitled to such exemption, and shall apply to all debts, except as specified in said section." Sec. 2, Art. X.

The property claimed as a homestead of James W. Keggin at his death consists of Lots 1, 2, 3, 4 and 5 of Block 52 of Macfarlane Park in Hillsborough County, Florida, the lots aggregating in area less than on-half acre. Lot 3 was owned by James W. Keggin while his wife was living. After the death of his wife, but while his son, Thomas G. Keggin and his family continued to live on the homestead with the father, James W. Keggin, acquired, in 1925, Lots 1 and 2, and, in 1929, Lots 4 and 5. Thomas G. Keggin married in 1925 and brought his wife to live with him and his father on the father's homestead. The other son, B. M. Keggin, moved from the homestead at that time.

James W. Keggin owned homestead real estate on which he, with his wife and two sons, Thomas G. Keggin and B. M. Keggin, lived. After the death of the wife, the sons, being then of age, continued to live with the father on the homestead. One of the sons, Thomas G. Keggin, married and thereafter with his family lived with the father on the homestead, and said son and his family continued to live on the homestead after the father died, the other son having moved from the father's homestead when his brother married.

After the death of the father the unmarried son who had moved from the homestead, conveyed the homestead to his brother, who with his family continued to live on the homestead. The two sons were the only heirs of the father.

The homestead exemption inures to the heirs where there is no widow; and the married son, one of the two heirs of the father, lived with the father on his homestead at and after the death of the mother, and until the death of the father; and continued to live on the homestead with his family after the death of the father. Under such circumstances, in the absence of a showing that the father and the married son did not regard the son and his family, while they lived on the father's homstead with him, as being of the family of the father, such continued living together of the father and his son and heir and the son's family after the death of the mother, will be regarded as constituting a continuing family relation which preserved the homestead character of the real estate, so that at the father's death such homestead inured to the two sons under the Constitution, exempt from debts of the father, except those debts, if any, which are specified in the Constitution as not being subject to homestead exemption.

The provision of Section 2, Article X, of the Constitution that the homestead exemptions "shall inure to the widow and heirs of the party entitled to such exemption, and shall apply to all debts, except as specified in" Section 1, does not limit the exemption to the "heirs" who are minors or dependents; but such exempt property "inures to the * * * heirs of the" father where the mother predeceased the father.

In Whiddon v. Abbott, 124 Fla. 293, 168 So. 253, when the wife died the husband was left alone in the home. Several years thereafter a son of the couple who had for years lived elsewhere, returned to live in the home with the father, but it did not appear that a family relation had been re-

established between the father and his son and the son's family.

In Dania Bank v. Wilson & Toomer Fert. Co., 127 Fla. 45, 172 So. 476, the homestead character of the property was not clearly established before, the death of the wife, and the son and his family who had lived on the homestead moved to another State and resided there for several years and upon his return with his family to his father's home at the father's request, his subsequent living with his family in the father's home did not appear to have been the re-establishment of a family relation between the father and the son and his family after the latter returned from residence in another State for several years.

In this case there was until the death of the homestead owner, a continuity in family relationship of two or more persons living on the homestead, such persons being among those who are entitled to the homestead exemptions under Sections 1 and 2, Article X of the Constitution. See Constitution of Florida, Annotated, Supp. of 1936.

The second question presented is:

"Does the failure to file a proof of claim by a judgment creditor in the probate of the estate of its judgment debtor bar its right following the administration of said estate to levy upon property upon which its judgment attached and became a lien at the time of its rendition?"

The statutes of Florida contain the following:

"Section 120. FORM AND MANNER OF PRESENTING CLAIMS—LIMITATION.—No claim or demand, whether due or not, direct or contingent, liquidated or unliquidated, or claim for personal property in the possession of the personal representative or for damages, shall be valid or binding upon an estate, or upon the personal representative thereof, or upon any heir, legatee or devisee of the decedent unless

the same shall be in writing and contain the place of residence and post office address of the claimant and shall be sworn to by the claimant, his agent or attorney and be filed in the office of the County Judge granting letters. Any such claim or demand not so filed within eight months from the time of the first publication of the notice to creditors shall be void even though the personal representative has recognized such claim or demand by paying a portion thereof or interest thereon or otherwise; provided, however, that the lien of any duly recorded mortgage and the lien of any person in possession of personal property and the right to foreclose and enforce such mortgage or lien shall not be impaired or affected by failure to file claim or demand as hereinabove provided, but such failure shall bar the right to enforce any personal liability against the estate, and the claimant shall be limited to the enforcement of the mortgage or lien against the specific property so mortgaged or held. Nothing herein contained shall be construed to require any legatee, devisee or heir at law to file any claim for the share or interest in the estate to which he may be entitled." Ch. 16103, Acts 1933; Sec. 5541 (92) 1936 Supp. to C. G. L.; Redfearn on Wills and Administration of Estates in Fla., 1933, p. 586.

"Section 123. EXECUTION AND LEVIES PROHIBITED.—No execution shall issue upon or be levied under any judgment against a decedent or against the personal representative, nor shall any levy be made against any property, real or personal, or the estate of a decedent. Claims upon all judgments against the decedent shall be filed in the same manner as other claims against estates of decedents.

"Provided, however, that the provisions of this section shall not be construed to prevent the enforcement of mortgages, pledges or liens, or claims to specific property, real or personal." Ch. 16103, Acts 1933, as amended by Sec.

8, Ch. 17171, Acts 1935; Sec. 5541 (95) 1936 Supp. to C. G. L.

Considering the two above quoted sections together, it is clear that such enactments forbid executions to be issued upon or levied under any judgment against a decedent, and forbids any levy to be made against any property of the estate of the decedent; and commands that claims upon all judgments against the decedent shall be filed in the same manner as other claims against estates of decedents. The proviso to Section 123 of Chapter 16103 added by Section 8 of Chapter 17171, includes "pledges or liens," but, in view of the preceding provisions, such proviso does not include liens of judgments obtained as in this case against the decedent in his lifetime.

Claims of general liens under judgments obtained against a decedent in his lifetime should be duly filed as required by Section 120 of Chapter 16103, Acts of 1933; Section 5541 (92) 1936, Supp. to C. G. L.

Affirmed.

BROWN and CHAPMAN, J. J., concur.

TERRELL, C. J., concurs in opinion and judgment.

Justices BUFORD and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.